Next case is number 21-3251 United States v. Dowdell. Mr. Coyne. Good afternoon, your honors. May it please the court. It is a pleasure to come down to Philadelphia. Thank you for having us. But before I begin, I have reserved three minutes for rebuttal. Very good. Thank you, your honors. Your honors, I think it's fair to say this is a most unusual case. After relying on case law provided by the government in its suppression briefing, the district judge in this case found that nothing that happened during the traffic stop violated Mr. Dowdell's Fourth Amendment. He didn't really find that. He hinted at that. I think it's more than hinted, your honor. Let's look exactly at the language. What exactly did the judge say on the back end about that? He said at pages A35 to A36 of our appendix, if the government had made these arguments, my view would be because the detective could have ordered Mr. Dowdell out of the car, I don't see any other constitutional concerns implicated by the officer merely opening the door. He also said... All right, before you go to the next one, let's parse the language of that. My ruling would be, I mean, it's conditional. He didn't make a firm ruling. He tipped his hand pretty strongly as to what he would have done. Can we agree on that? I think he did more than tip his hand pretty strongly. I think he made crystal clear to the government that had you raised this argument, I would have denied the motion. Because he also says, I want to make clear, and this is on A32, for purposes of review, that I do think the government had an alternate basis that was available to them, but it was not raised by the government. It seemed to me if the government had raised the alternate analysis, the government would have prevailed. That's A32. Yeah, but again, it wasn't raised. The issue wasn't joined. It wasn't fully litigated. And if all of that had happened, which didn't happen, maybe his suspicion that he would have granted it would have changed. That's all possible, right? I mean, how could he predict with perfect clairvoyance what would have happened had a bunch of things happened that never occurred? I don't think, and I am sensitive to the perfect clairvoyance point, but I don't think this is an issue requiring perfect clairvoyance. The judge, relying upon case law that we cited, in particular Pennsylvania v. Mims, and Marilyn v. Wilson, said under those cases that Detective Gambino could have ordered Mr. Dowdell out of the car. Right, so his reading of Mims is that it could be extended to order, Gambino could have ordered Dowdell out of the car. But again, he was criticizing, as I read the record, correct me if I'm wrong, he was criticizing the government for not elaborating or pursuing that portion of Mims and saying, look, if you take Mims at its word, it should be extended to these facts to Dowdell. Isn't that what the judge was suggesting could have been an argument? I think it was more than it could have been. I think the judge was criticizing the government for not affirmatively making that argument. And I appreciate that this is subjunctive, in a sense, right, because it didn't happen in the court. The judge's view was we did not raise the winning argument. And even worse, sort of according to the judge, was he specifically asked the prosecutor, right, just to be clear, you're only arguing Terry. Under Terry, you had reasonable suspicion to open, Gambino had reasonable suspicion to open the door. And I think the answer was correct. The answer was worse than that, actually. And look, I've been doing this for 18 years, 15 years as an appeals, I would say, and 12 of which as being the appeals chief for the U.S. Attorney's Office for the District of New Jersey. So I'm not here to say that this was a plus briefing by the government. But what was it wasn't correct? What was the response? Well, the response was absolutely. Absolutely. It's worse, right? Okay, in that sense. I mean, I guess you see what I'm struggling with is that, as you know, with your extensive experience, that this court has a very vigorous forfeiture doctrine. Certainly does. We have a vigorous waiver doctrine, not all circuits do. Those doctrines have been invoked not infrequently against defendants. We make sure that we invoke them where appropriate, equally against the government. And our adversary system requires that issues be joined, debated, briefed, fully aired, and litigated so that trial judges can make a decision. And this record seems to scream out that this district judge was deprived the opportunity to consider other arguments besides the Terry reasonable suspicion argument. What am I missing in all that? Well, Judge, I don't agree with that full characterization because it seems clear to me, and taking a step back, the issue preservation standards in this circuit are strict. We're not disputing that. We're not asking you to change them just because we're the government. We agree that the same general issue preservations apply to all that against the United States and criminal defendants alike. We're not asking you to change that. We do have a slight disagreement with an assumption in this court's precedent about rule 12 waiver by operation of law, but I don't need to get into that at least just yet. I'm just focusing on pure issue preservation and the ordinary rule of raise or wave. And the reason for that rule... Sorry, let me just cut you off there because you know that we've been explicit, Judge Smith's opinion and Joseph in the distinction between issues and arguments. Absolutely. I don't think I have a quarrel with you about issue preservation, and I've got Dupree in mind. So do I. So respectfully, I don't think that showing us issue preservation gets you where you need to be because you've got to show argument preservation. Yeah, it's same rule, same facts. We have same facts here. Certainly, Judge Vasquez's view of this record was we did not advance the same rule. Now, our pre-trial briefing did argue... Sorry, our pre-ruling briefing, not pre-trial briefing. Our final brief on the issue did invoke Rodriguez for the proposition that everything that happened from the inception of the stop until Detective Gambino saw the bulge in the jacket, in the front jacket, was lawful and on mission. I didn't get that at all. This isn't a Rodriguez case. Rodriguez cases are about traffic stops that extend five minutes, 10 minutes, 45 minutes. That's Rodriguez. Everything happened quickly here. Everything does happen quickly, and I recognize my good friend, Mr. Sharma, is not raising a Rodriguez argument. But when you say in a brief to the court, everything that happened during this stop was lawful and on mission for the stop inside Rodriguez, you're talking about what the mission of the traffic stop is, to investigate the motor vehicle infraction, to determine the lawful operability of the vehicle, and to take reasonable measures to protect officer safety. That's the mission of the traffic stop. And this act here, opening the car door, was a reasonable safety measure, objectively reasonable. Where was that argued in the district court, that the reason Gambino opened the door was officer safety? We know he had a right to order them all out of the car, right? We know that's black letter law, right? But he didn't order them all out of the car. He just opened the door. He opened the car door. And then I'll give you an example from the 11th Circuit. It's U.S. v. Cotton. I think it's a 1983 case. We cited it in our reply brief. In that case, it's a traffic stop of a pickup truck. The stopping officer walks up to the driver's side door, driver's door, opens the door, asks the driver for his license. 11th Circuit held, relying on MIMS and the reasoning in MIMS, it saw no constitutional distinction between ordering the driver out of that pickup truck versus opening the car door. Right, and that could have been a winning argument for you, but your line prosecutor didn't make it. Your line prosecutor said that on the totality of the circumstances, Gambino had reasonable suspicion to believe criminal activity was afoot, i.e. Terry. That was the argument, right? You know, I must confess, and I've been looking at this record an awful lot, as you can imagine, even longer than preparing the brief, because of course, as you know, we have to assess whether we're going to seek permission to appeal. There's been a lot of looking at this record, and I'm certainly here, as I said quite clearly in my briefing, we could have done a much better job of guiding, explaining why everything that happened during the stop was reasonable. No dispute here, and I'm sorry that happened, and we've taken steps to fix that in other cases, but for purposes of this case, okay, it's not entirely clear to me if my counterpart understood exactly what the judge was getting at. I think the judge was getting at, are you arguing under Terry a reasonable basis to believe somebody in that car is armed and dangerous, because I think that's the most logical inquiry, as if this were Michigan v. Long, right? The justification for interior of the car, and then once the prosecutor answered yes, the judge assumed we were arguing, essentially, our argument was a concession, effectively, that we had to satisfy the Terry Frist standard to even open the car door. We should not have made that argument without at least also saying, we think that officer safety, this was a reasonable measure to take to protect officer safety. No doubt about that, we should have done that, but the problem that I have, and why I'm here, is it's not just the judge's explanation couched in the subjunctive, if you would have argued this, I would have suppressed, I'm sorry, I would have denied the motion. That then triggers the animating purpose for the exclusionary rule, which is to deter law enforcement misconduct. Now, we've had full- Yeah, I mean, that's, but again, you know, perhaps another opportunity missed by the line prosecutor. How about Herring? How about Hudson? How about Davis? Judge, if I'm wrong about Terry, this was an honest mistake and deterrence does not pay its way here. See Herring, Hudson, and Davis, but none of that was argued. So, actually, the prosecutor who stood up to ask the judge to clarify the ruling is here in the courtroom today, observing this argument, but what he did say was, but judge, effectively, as I read the next several pages of this back and forth, judge, he could lawfully open the car door. Our position is he could lawfully open the car door. All right, but why? For the reasons- Because it's Terry, right? Well, I mean, I, look, I think, I think you could argue that the judge put the prosecutor in a tough spot, almost, you know, a gotcha question. Oh, it certainly was a gotcha question, Judge Hardiman. But, but the prosecutor- Let's not kid ourselves. But the prosecutor fell for it. Yes, the prosecutor did. I mean, this, this is why, this is why lawyers, you know, belts and suspenders are a regular apparel in the courtrooms, right? For this reason. I appreciate that, but- All the eggs were put in the Terry- Show me, show me why- Can I, can I ask, can I ask a question here? I- Yep. Thank you, Judge Richard. I might, I might be 300 miles away, but it's not the mileage that's confusing me. It's maybe the approach that you're taking that's confusing me. You know, it seems to me here that you had a suppression hearing. You had this suppression hearing that you objected to. You objected to the suppression hearing. You said there was no violation. But at the suppression hearing, Dowdell brought Hyman in, the driver of the car, uh, to testify that she didn't make an illegal right-hand turn and that there was no traffic violation. That was her argument at the suppression hearing, his argument at the suppression hearing, correct? Correct. Okay. Uh, as a consequence, since there was no traffic violation, the whole episode was an illegal seizure and an illegal search. But then the judge, the district court judge asked for post-suppression hearing briefing. And in the suppression hearing briefing, Dowdell makes the same argument, uh, about, uh, no traffic violation and then throws in Florida versus Jardine, uh, that opening the door was a warrantless physical intrusion and seeing the bulge wasn't enough to justify a frisk. Okay. Would you agree with me on that? Absolutely. A new theory got added that opening the door required its own justification under Jardines. Okay. So on response in your brief where this team seems to have gotten confusing, uh, the government said you needed to credit Gambino's testimony on the traffic stop. And you argued, argued Terry, that there was reasonable articulable suspicion of criminal activity, but you also argued that opening the door was reasonable under the totality of the circumstances. So I don't understand you're getting hung up about what you did or didn't argue, but it seems to me, if you look at what your brief argued, uh, it wasn't, uh, it wasn't until the reply brief, which Dowdell filed, it said you didn't argue that you didn't object to the opening of the door argument, but in effect, you argued that the opening of the door argument was reasonable. We did argue that. I mean, just the way you presented your argument, it seems to me that, uh, although counsel's position in his brief may not have been perfect, that there was enough preservation here. So what am I missing? I think judge, I don't think you're missing it. I mean, I think the complicate, and I just want to be in all candor with the court, what makes it a little more complicated than just that. And I was alluding to that point, judge Fisher, and not as well as you just expressed it in talking about how we invoked Rodriguez and how this was all reasonable and on mission. But there's a part of that brief, that post-hearing brief that says what was done here, opening the car door was reasonable under the circumstances, given everything detective Gambino knew about the occupants of the car. He knew they were both bounty hunter bloods. He knew that from his own personal experience. He knew that the bounty hunter bloods were involved in an escalating gang war. He knew that the defendant, Mr. Dowdell's own house had been shot up in a drive by shooting just a few days earlier. So there's a lot, he knows a lot about two of the three occupants of the car. And under those circumstances, we said, and I thought we said, not as well as we could have, but I thought we did enough to preserve the point in that brief, in that post-hearing brief, that opening the car door was a reasonable measure, a reasonable intrusion in assuming a fourth amendment protected interest, right? Because there was another argument we could have raised, which we didn't, which is standing. We didn't raise that. I'm not asking reverse on standing grounds, but we did make that point that it was reasonable under the circumstances. That's not just the Terry standard. That's, is it reasonable? The fourth amendment test is reasonableness. Measure the intrusion into the fourth amendment interest of the defendant against the legitimate social interest that that intrusion protects or fosters. And that's my point here. And I think, and Judge Vasquez, to his credit, got that. He did get that. Where I disagree with him is that he said, we effectively never raised this argument at all. We then tried to join the argument as soon as he says, we never raised it. Then he says, you waived it. And then he grants suppression, which leads to the other point. Did my colleague, did my, my learning? The whole thing was a bit of a mess because they, they may not have been timely in raising their argument about the opening of the car door. That was first raised in a, in a post-hearing brief, right? Was that issue really joined and aired at the hearing? So, the court will indulge me. I mean, when you look at the text of rule 12, the deadline, it's a, you're, so the court sets a deadline for motions, right? It doesn't talk about like the hearing, you know, post-trial post-hearing motions or supplement, sorry, post-hearing briefing after those motions, it sets a deadline for a motion. And then if you fail to meet that deadline and this court's precedent has said that is in the suppression context, by the time the court rules, then you have to show good cause to raise the defense objection or request, but it's all tied to motions. He made the motion. We opposed it at, even at the evidentiary hearing, my good friend said it in addressing a different point that he thought a point the government was making was a bit of a sideshow because really all that mattered was, was there a motor vehicle infraction? It was only after the evidentiary hearing, after when he filed his post-hearing brief that he raised for the first time, the Jardines argument to which we responded nowhere nearly as well as we could ever should have. So really what should have happened in a, if we could all rewind the clock, what should have happened is once the judge found credible that there was a traffic violation, there should have been a new hearing about what happened after that. Well, I, you know, one option would be a new hearing to send it back. But I mean, the other point I'd make, and I think, I hope we've done, I mean, my good friend, Mr. Sharma, I think has done a fine job in his brief. And I've certainly tried to do as good a job as I could on the merits question. Is Judge Vasquez, was his conditional ruling, if you want to call it his intuition, but I think it's a lot more than intuition, was his belief that you, that if you can open order passengers out, that means you can also open the car door without any further justification. Was that correct? We think it is. I don't see anything in the response to a brief that seriously disputes that. We're not arguing that opening the door wasn't a search. We're saying, assume it is a search. It was reasonable under the circumstances. That's our argument. Mr. Coyne, let me ask you one other simple question. I think, I think it's simple. At least the answer should be, but, you know, frequently as Judge Hardiman cited, we cite our jurisprudence in U.S. versus Joseph, okay, which was decided about 10 years ago. Uh, you don't cite that in your brief. Uh, can you distinguish your argument from what we held in Joseph? I, I thought we did, Your Honor, cite or acknowledge Joseph in the brief, and we certainly cite in our reply brief a brew, which says the, the Joseph standard applied in the context of a guidelines objection. We're, we're, we are not ignoring the Joseph standard. We are, we, we understand the standard to be same issue, sorry, same rule, same facts. And this, the facts here are the same, right? The problem for us, and I'll concede, is whether we really did enough to invoke the same rule. But we did, in addition to arguing Terry, which in my view, we never should have. I think much of this briefing was a sideshow. We should have focused on the automobile cases, right? And we didn't, and that was a mistake. But we did argue reasonableness, Fourth Amendment reasonableness, right? We did do that. And I think that that may well be enough to get us out of the issue preservation problem, given that Judge Vasquez himself didn't, I mean, looking at that transcript, he didn't need to be clairvoyant to figure out what the winning argument was. He identified the winning argument. And then my, my good friend, AUSA Frazer tried to adopt it. Let's, let's, let's prove that reasonableness argument on rebuttal. Thank you, Mr. Chairman. Thank you so much, Mr. Sharma. Thank you, Your Honor. Good afternoon. I may have pleased the court. An argument is waived if a party fails to unequivocally put its position before the trial court in a matter that permits the court to consider its merits. Here saying that the search, saying that the opening of the door was entirely proper in the tot, under the totality of the circumstances was certainly not enough to permit the court to consider its merits. Now the government is changed its argument and said that reasonable suspicion was not required in order to open the door. This is a classic case of waiver. This is as classic case as this court is ever likely to find. The court should affirm. I want to emphasize that remanding would require this court to ignore the basic principle that a party may not come here and make a different argument than it made below and obtain relief on that basis. Moreover, I, you know, the government absolutely does ignore Joseph in its, in its briefing. I think a bigger point that the government ignores is U.S. v. Meredith and U.S. v. Brown, the Fifth Circuit and D.C. Circuit cases. The government does not, in its reply brief, address Meredith's, the Fifth Circuit's finding in Meredith that opening a car door requires reasonable suspicion. That case post-dates both Mims and Wilson and predates Jardines and Jones. All right, but the law is clear that Gambino could have ordered the past, the three passengers out of the car, right? Correct, your honor. All right. It's arguably less of an intrusion to say, you know, I'm going to open the door for the car, right? That's, that's not an, that wouldn't be an, I think you'd oppose that holding, but it's not beyond the pale, right? I would agree that it's perhaps not beyond the pale, but- Your point here is they just didn't make that argument here. It's not my only point, your honor. I think we, I think remand, I think remand would lead, you know, I think the district judge, first of all, I want to dispute the characterization of district judge's question about Terry as a gotcha question. I think it was a clarifying question. I, I earnestly believe that. I think the judge telegraphed the issue as much as he could without affirmatively coaching the government. The judge was inviting argument and further discussion about whether Mims should extend to the facts of this case. Does the record reflect that? No, your honor. No. So how did the judge telegraph or how did the judge sort of open it up for more fulsome argument other than sticking with Terry or not Terry? Well, the judge clarified is your argument that it was appropriate under Terry, under the reasonable suspicion standard under Terry. And, you know, I think that Meredith and Brown, you know, the government is basically saying, oh, well, remand this case so that the, so that the district judge can, can consider the fourth amendment argument. What, what the district court would have to do to find in favor of the government is create a circuit split, create a circuit split with both Meredith and Brown. And I just want to emphasize that Brown from 2003, again, postdating both Mims and Wilson, the government conceded that, conceded that Terry, that reasonable suspicion is required to open a car door. And I think it's different in kind from ordering the occupants out of a vehicle, your honor. First of all, once again. It's different in kind, but it may be less intrusive. It may be more, it could be more intrusive, could be less intrusive depending on how it happens and where the car's located. Precisely. There's one thing we know from fourth amendment jurisprudence is that the facts matter. Absolutely, your honor, but fourth amendment jurisprudence is all about line drawing, right? And so here I don't think it's always necessarily under, you know, it's about line drawing with a specific standard. And here the issue is what standard is required, right? What standard is required to be met under the government's view? Um, under the government's view, uh, no additional suspicion is required in order to open a car door after a, after a lawful traffic stop, the government says on page 10 of its reply brief at most, this court should require circumstances justifying an objectively reasonable belief that opening the car door would be a prudent safety precaution in support of that, in support of that finding, uh, or in support of that argument, it cites two state laws, two state Supreme court cases from New Jersey and South Carolina. It also cites USB Stanfield, which once again, analyze the appropriateness of opening a car door under Terry. So we have three circuit cases. We have Meredith, we have Brown and we have Stanfield all analyzing the appropriateness of opening a car door under Terry. This will, I think, honestly, what I think is happening here is the government wants a third bite at the apple to argue standing. I don't, I think the government, the reason it ignores Meredith and the reason it ignores its own concession in Brown is because it knows that it would be creating a circuit split for this court to hold that, um, that opening a car door requires some level of suspicion, less than reasonable suspicion, but it's seeking to argue standing, which it also waived below. This is classic waiver, your honor. And I think that waiver, I just want to be clear. I don't think that we're arguing. Um, I don't, I think that the district judge, he did some, you know, quick preliminary research and he said, perhaps you could have made this plausible argument. And he says at pages 32 and 40 of the appendix, he says, I'm only saying, I think this, I could have found this way. It seems to me that if you had argued this, that I would have made that finding. It's not uncommon at all. Can I ask you this, sir? Could I ask you this question? Sure. Your honor. At the suppression hearing itself, you, your client essentially argued that there was no basis for the traffic stop because there was no traffic violation. Correct? Correct. Your honor. And there was no Florida versus Jordan argument made at that time. Correct. Your honor. We only discovered during the suppression, during the suppression hearing that the judge said, I mean, we only discovered during the suppression, uh, during the suppression hearing that the officer only opened the door in order to speak to Mr. Dowdell. Um, and so we, and so we are obligated to raise that in post hearing briefing. So you raised that and they responded to it. They responded to that. If not in name of Florida versus Jardine, they at least responded by not only continuing to assert their reasonable articulable suspicion argument, but they responded that opening the door was reasonable under the totality of the circumstances. So if you had not even raised that at the suppression hearing, how could it be said that there was any waiver when in fact they answered your Florida versus Jordan argument in their brief? Your honor, I respectfully disagree that saying that opening a door was entirely proper under the totality of the circumstances is enough to unequivocally put a position before the trial court in a manner that permits the court to consider its merits. I think that that is simply stating the standard and saying we've met the standard. Um, I, I don't think that's enough. Um, I don't think, uh, that comports with the party presentation principle, the idea that it's an argument, but, but as I hear you, you're saying it's far too generic to constitute a, a preserved argument. It doesn't, it doesn't put the defendant or the court on notice what the essence of the argument is because it just states the standard. Is that your argument? Yes. And I want to address what Mr. Coyne says about, um, about, well, relying on cases we cited, the district court found this plausible argument and the government is absolutely correct. It's cited Mims and Wilson in its brief. It did not cite those cases for their holdings though. It simply cited those cases saying this was entirely proper under the totality or for generic, um, fourth amendment principles that a search must be reasonable. Um, I don't think that's enough. I think that would encourage litigants to say, oh, the fourth amendment prohibits unreasonable searches and seizures. Let me cite every single fourth amendment case that I can think of. That's why I told your colleague I had Dupree in mind. That's what happened there essentially. Okay. Suppress the evidence because there's a fourth amendment violation. Well, why is there a fourth amendment violation? Right. Your honor. And I think that Joseph absolutely controls here on the procedural point. And I think, I think Meredith and Brown don't control here of course, because they're out of circuit cases. But I think it's very telling that the government ignores Meredith completely and ignores the fact that in Brown, it conceded that opening the door to a stopped vehicle requires reasonable suspicion. And I just want to say something. I don't think that we're seeking, um, you know, I recognize that if a district court did its own research and found definitively that one side should absolutely win. Right. I think that if that happened, um, it's absolutely appropriate for the district court to say, you know what? You failed to make this argument, but I'm required to rule in your favor because the law requires me to. So for, for example, if a defendant argued, I'm a sovereign citizen, not subject to the laws of the United States. And suppose the government failed to specifically respond to that argument. I don't think a district judge is required to then say, oh, government waived this argument. I find that the defendant is a sovereign citizen, not subject to the laws of the United States. I think, you know, there's some sort of plain error, but if the government, if the government made a mistake and your hypothetical and the judge made a mistake in the hypothetical, and then the government appealed it to our court and again, failed to argue that the sovereign citizen is in fact subject to the laws of the United States. And if the government only argued some sort of jurisdictional point, we can't rescue the government there. Right. Um, I don't, we can't reverse for any reason. And under Joseph, our hypothetical, the government would have waived the easy winning argument. I believe that may be correct, your honor. I mean, I think, I think if the government on appeal did raise the argument, oh, you know, he's not a sovereign citizen, plain error would apply. And plain error, um, under plain error, there's clear controlling case law saying everyone is subject to the laws of the United States. Everyone in the territory of the United States is subject to its laws, but here it's a much more, it's a much more subtle and it's a much more subtle issue at best. In our view, it's not a subtle issue. In our view, there's a reason that the fifth circuit, just as a matter of course, said opening a car door requires reasonable suspicion. Once again, post Mims and Wilson pre Jones and Jardine said that. I think there's a reason that the DC circuit, that in the DC circuit, the government just conceded opening a car door requires reasonable suspicion. That's because it's a classic search. You open the car door and you're able to see under into the side pockets. You're able to see under the seat. I think remand here would be simply a waste of resources. When all the occupants are ordered out of the car, the doors open. They don't, you know, transport themselves through the doors so that the officers can see in the car anyway. Your Honor, I, that's why I'm suggesting that perhaps not in all cases, but in many cases, opening the door would be less intrusive and less of an annoyance than, than ordering the occupants out of the car, particularly if they're standing on a, in a high speed area close to the road. Well, your Honor, I think that would be a separate issue. And so at a specific case, right. Or as you know, in Meredith, what happened was the officer ordered the occupant out of the vehicle and he claimed that he was disabled and unable to, unable to exit the vehicle. So there the fifth circuit found, well, with that extra fact, you are permitted to open the door in Stanfield. And here, if it were litigated, there's a chance this judge, based on how he signaled, if the argument was shooting a couple of days before they had been at Hill's house, known to the police, known gang members, et cetera, et cetera, open the door for officer safety. There's a chance the judge could have made that decision and said that was reasonable under the circumstances. I actually don't think so, your Honor, that the government, the government, you know, the district court found there was no reasonable suspicion. The government hasn't appealed reasonable, it's reasonable suspicion. No, I'm positing that if they had made the argument that you're claiming they didn't make, there's a chance the judge could have ruled in their favor. I mean, the judge signaled that he may have. I'm not, I'm not a seer. I don't know exactly what the, what the district judge would have done. He said would, he didn't say I might. He said, I would. Well, he said, I think I could find. Could he say would? He, he, he said at one page 32 and 40 of the appendix, he said, let me make this clear. I'm only saying, I think I could have found this. Could the government have made both arguments at the same time or are they, or are they inconsistent under the Terry theory of the facts? Uh, they opened the door because they have a reasonable suspicion of criminal activities. They're going to check that out under the Mims Wilson theory of the facts. They bring the guys out for their, for officer safety is complete. It's like the, the, the view of the facts aren't even the same under those two arguments. I think you can make that argument in the alternative though, your honor. I mean, I think the government, if it wished to, it could argue, I'm out of time. May I finish my answer? Um, I, I think the government could have said, uh, uh, could have said, uh, look, he was permitted to, uh, open the door under Mims and Wilson. Once again, we would vigorously argue against that under will under Brown and Meredith. Um, uh, in the alternative, assuming reasonable suspicion was required under Terry, we've met that standard. So I think, I think the government could have made that argument. The government didn't though. It said it's entirely proper under, but once the judge says you haven't met the Terry standard, can they then switch and say, well, it wasn't actually a Terry search. It was a Mims Wilson protective measure. Uh, no, your honor. I mean, I don't, I don't think that a litigant can choose one standard to argue and choose not to make an alternative argument. And then if the judge says, well, under the standard you chose to argue, I find that you lose then suddenly say, oh, judge, hold on before you rule or before you finish talking in your ruling and you're ruling from the bench, uh, we're, we're going to change our theory. Well, that's sort of what you did with your post hearing briefing, right? They could have probably thrown the forfeiture flag on you. If, if the hearing was really focused on the legitimacy of the traffic stop and you weren't arguing that opening the door was invalid, when you threw that over the transom in the post hearing briefing, they, they conceivably could have said it's too late to make that argument. That wasn't what the hearing was for. Or alternatively judge, if you want to revisit or consider in the first instance, the legitimacy of the opening of the door, then we need to reconvene for a whole new hearing to, to join that issue. I disagree, your honor. I think, uh, look, uh, people litigants make arguments before hearings in order to get the hearing right. And then at the hearing, all kinds of things might come out. The officer, if the officer said, oh, I decided to, uh, uh, I decided to racially profile them or, uh, stick with the true facts of this case. What, what facts were adduced at this hearing to show this court that it was a live debated issue about the legitimacy of opening the car door? We know it was a debated issue regarding the legitimacy of the traffic stop. Well, I don't think something, what, what in the record tells us that the, the legitimacy of, of Gambino opening the door was, was fully aired in the, in the hearing? Well, your honor, um, I don't think that I think it absolutely was fully aired. What else could Gambino, what else could detective Gambino have said? I, he, he absolutely made clear. I opened the door simply to speak to him. And so we, we work on what is also, he also made it clear that he was concerned about his own safety, the safety of the other officers, uh, because of two gang members in the recent shooting. Your honor, uh, he, he testified that he could very clearly see into the car. Um, and he testified that the windows weren't tinted, that he could clearly see Mr. Dowdell. And he testified that he only opened the door in order to speak to Mr. Dowdell. And so I, yeah, but you can't, you can't disassociate his knowledge of who these people were and the shooting that had taken place within a few days before that. I mean, speak to him about what he may have been speaking to him about, uh, you know, what they were doing, riding around. Uh, uh, there could have been a lot of reasons he was speaking to him, but his personal safety and his safety, the other officers are certainly in play there. Your honor, the safety of officers is in play in every single traffic stop. I fully, I, I fully agree with that. Um, I don't think that we are limited. I, I know of no case saying that we are limited in our post hearing briefing to only the issues brought up before the hearing. If an evidentiary hearing shows an issue that is new to us, then we are permitted to put the court on notice. This new issue that came up, the officer, suppose the officer said, I actually didn't, um, I suppose the officer said, I, this is obviously a hypothetical, but suppose the officer said, I lied in my, in my police report. I did see it. Uh, I did see the car use its turn signal, but I stopped the car simply out of reasonable suspicion that there was wrongdoing based on the fact that I saw it outside of this house where I know drug dealing to take place. And based on who I know hangs out at that house, I think we would absolutely be permitted to argue that in post hearing briefing, we are unequivocally putting our cards on the table. We're unequivocally putting our argument forward to, for the court to consider its merits. And I have no, uh, I know of no precedent saying that you forfeit an issue. If you fail to raise it before an evidentiary hearing, if the evidentiary hearing raises a new issue. Mr. Sharma, I'm not saying that you did, but what I'm saying is in effect, what you raised, but the opening of the door was a warrantless physical intrusion, which allowed Gambino to see the bulge. And you cited Florida versus Jardine to say that that was improper. And in response, they said opening the door was reasonable under the totality of the circumstances, which included the safety of the officers. I mean, I'm not arguing with you that you couldn't raise it, but what I'm saying is I'm not sure I see why you or the district court said that they didn't respond to it. Well, that might just be a difference of opinion, your honor. I don't think that, uh, saying it was entirely proper under the totality of the circumstances was enough to preserve the your honor is saying, well, I, I think maybe the Terry standard was met here. Um, I, I just want to emphasize the government's not arguing that here they're arguing, uh, that some standard lesser than Terry should apply. So once again, the government has waived that issue as well. Um, in conclusion, remanding would require this court to ignore the basic principle that a party may not come here and making a different argument than it made below and obtain relief on that basis. Moreover, it would waste resources. It would lead to the exact same outcome as a straight affirmance as U S V Meredith and U S V Brown decided that reasonable suspicion is necessary to open the door of a stopped car. The government should not get a third bite at the apple. This court should affirm. Thank you, Mr. Sharma. Thank you. Rebuttal. Mr. Coyne. Thank you, your both my prior response to judge Fisher. I'm sorry. I did not cite, um, uh, Joseph by name in my brief, what we did acknowledge that Joseph standard through a brew and other cases, we are not running away from Joseph as sort of the setting the benchmark for what it takes to preserve properly, preserve an issue or appeal to be clear, or an argument or an argument, sorry, but you know, to not have forfeited or waived. And then we get into arguments about how rule 12 works when it's the government opposing emotion, which with the court's indulgence, I'd like to get to in a second, but one other point, but could you, could you address before I forget, um, the issue, um, that judge Fisher raised about your briefing, uh, talking about the opening of the car door being, um, acceptable under the totality of the circumstances. So you, you made that argument, correct? We certainly did. All right. So, so my question is, why is that argument sufficiently specific to put your adversary in the court on notice as to what the argument was rather than just sort of stating a generic standard under the fourth amendment? Look, the argument certainly could be, could have been a lot more specific. And, you know, as I was preparing for this argument, and as soon as I saw the panel, I thought this is Dupree too, because two of the fine judges on the Dupree panel are, I had the privilege of arguing before today. Well, as you know, there were three opinions in that case. There were three opinions. I'm not sure, but that was one of those instances where this court provided tremendous assistance to the, to the lawyers who appear in front of us. So I guess we owe you all an apology for that. What I will say is I have an even more newfound, I guess, newfound appreciation for much of what both you said, Judge Hardiman, your opinion for yourself and Judge Fisher, what you said in your opinion for yourself on issue preservation. These are tough questions. I get that, but I do want to make one other point that ties back to something that I think Judge Fisher queried about, which is, I don't think it's altogether correct to say that the first time my good friend had any idea that Detective Gambino opened the car door just to talk to Mr. Dowdell was at the evidentiary hearing, A61 of our appendix, that's volume two, in our brief opposing before the evidentiary hearing, the suppression motion, we said Detective Gambino, who had previously been familiar with the defendant, opened the rear door of the BMW in order to speak with the defendant and immediately observed a large bulge underneath the defendant's jacket around the chest area. We said that in our brief, we don't make factual representations like that lightly. We said that because that's what Detective Gambino told us. So our brief made clear that the car door was opened before Gambino saw the bulge and that he was opening the car door to speak with Mr. Dowdell. Now, his subjective motivations I think are irrelevant, but also in the evidentiary hearing around 104, Detective Gambino said he was doing in the midst of a protective sweep. I think it's Judge Fisher's point is absolutely well taken that animating his step here was officer safety given everything he knew about who was in that car. I want to add another thing in rebuttal if I may, which is that we're not asking for a remand for a do-over. We don't believe a Fourth Amendment violation occurred here. Well, and you say the judge said as much. The judge makes it's a peculiar case. How do you lose a suppression hearing when you're and the judge says you didn't violate the constitution? Yeah, that's and that is the other point of our briefing, which is that the exclusionary rules only exist, only justification. The Supreme Court has said time and again, it's hard to defer law, but deterrence of law enforcement misconduct. Yes, not not right, but not for briefing by the United States. But tell me tell me why why this doesn't illustrate law enforcement misconduct. He didn't need to open the door to talk to Dowdell. He could have talked to him without opening the door, correct? Sure. He could have talked to him without opening the door. All right. So I keep trying to ask myself, what's the reasonable articulable suspicion? And I keep coming back to. These guys are known to police, Gambino knows them, he knows about the shooting, and he's really suspicious of these guys, but that's not enough under the law. You've got a traffic stop for a minor, a tiki tac, you know, it's a turn signal violation, I believe, right? Yeah. So engage the right. So, you know, he he doesn't have a right to search them because he thinks that they're gang members, right? That's assuming because he knows even if he knows they're gang members, he doesn't have a right to search them because that goes to their status, not to anything they were doing 10 minutes before the traffic stop or even two hours before the traffic stop. So taking a step back and Mr. Scharmer's right, we're not appealing the rejection of a pure Terry argument here, right? We're not appealing that. Our argument is the judge was right. You don't need additional justification beyond a lawful traffic stop itself. Put another way that opening the door, if it's a search, it's a search incident to a lawful traffic stop. Just like if the VIN is obscured, you can open the door and move papers around to see the VIN. It's a lawful incident of a traffic stop. Right. And let's assume we agree with you and let's assume we agree with Judge Vasquez's predictive ruling on that. Yes. There's not a lot of case law that says that. Isn't it fair to say that's an extension of MIMS? You know, if it is an extension, it sounds like an eminently reasonable and logical extension. Sure. Okay. Let me grant you that as well. But if it's not black letter law, if it is an extension of any sort, it's precisely the type of issue that a judge would want to hear a lot of facts and get a lot of briefing so the judge can make a decision. And to Mr. Scharmer's point, if the judge is perhaps going to be creating a circuit split, that issue needs to be fully litigated and fully aired before the judge writes that opinion, disagreeing with a couple of courts of appeals. I see my time has expired if I get my answer and there was a bit, there's a fair amount to unpack there. So a couple of things. One, the circuit split already exists. 11th circuit decision in Cotton that I have recited to this court. Two, the reasoning of Judge Ludwig in the Sansfield case is worth carefully considering because that's probably the best explanation that I've seen anywhere of why opening the car door as Judge Hardman, you yourself was pointing out more often than not. And I would submit probably 90 times out of a hundred will be less intrusive, less intrusive than ordering the passenger out. And in that case, there were tinted windows. There were tinted. So these are the kinds of issues that need to be presented to the district court. District court has to say, well, those were tinted windows here. We don't have tinted windows in those cases. There weren't gang members here. We have gang, but the record here, none of that was really aired out, but the record here shows that the car, the windows weren't tinted, right? I mean, taking a step back on that, but I'm pointing out that those, I guess I'm just suggesting the battleground in the district court should have been all about these, the circuit split and the facts and circumstances of this case and why he opened the door. Perhaps you're right. Subjective intent doesn't matter, but the objective realities about whether the door should have been opened. And instead the hearing was all about whether the turn signal was on or not and whether the, whether this was a Rodriguez case. So it just, it strikes me as a hearing that was focused on all the wrong things. Well, I think to take a step back and again, I'm, I'm obviously with the benefit of hindsight, I'm not suggesting that in the throes of, of the adversary proceeding, that it's a lot more difficult than from here. Uh, and if I may respond and then, and then submit, and I think a couple of things, I, look, the way the, the suppression issue was teed up, Mr. Dowdell submitted an affidavit disputing off the detective Gambino's versions of event and saying effectively there was no traffic violation. You got to have an evidentiary hearing to dig into that, right? We'd already disclosed that the door was open before detective Gambino saw the suspicious bulge. And so, and, and that came up as well during the course of the evidentiary hearing. I'm not sure what more factual record one would need to air the legal issue, the pure legal issue of whether given what the facts showed here was opening the car door, an objectively reasonable incident to an otherwise lawful traffic stop. Good point. All right. You're saying this isn't one of these cases where the facts are really in dispute once you get past the turn signal issue. Yeah. Yeah. I don't think the not only to this court, but also to judge Vasquez for my office, not doing nearly the kind of job it should have done. And that courts are entitled to expect from the government. But what I want to close with this, and that's invoking the 11th circuit en banc decision in Campbell. And if I could explain a little bit why there, the government argued no Rodriguez violation effectively, but this was before Rodriguez actually right around Rodriguez and in any event, good faith, right? District court says no Rodriguez violation never reaches good faith on appeal before the panel. Government's responsive brief says no Rodriguez violation doesn't mention good faith. It goes on and it prompted some of the most heated decisions back and forth. I look at those decisions and I thank the Lord that I have the privilege of practicing before such a collegial batch. But there are heated decisions back and forth. But the majority decision opinion there says before they say good faith applies, they have to reach the waiver issue. And there in words, I think, apply equally here of the court. The majority held it. The exclusionary rule is not intended to punish deficiencies by government, by counsel for the government, because that would turn the exclusionary rule on its head. It's supposed to deter law enforcement misconduct. That's the whole basis for this court's interpretation of Rule 12, dating back to Rose. And so for that, that's all true. But if, if Gambino should not have opened the car door, then technically that's government misconduct, right? If he should not have opened it, but we believe he was entitled to open it based not just as a search incident to a lawful traffic stop. That's the broad rule. But then we are also arguing a sort of reasonable circumstances. And as again, as we've laid out in our briefing, it's not so cut and dried as my good friend suggests. It's not just that there's a circuit split on the lawfulness of just opening the car door. And again, I go back to that cotton decision in the 11th circuit, but even in jurisdictions that require something more, they say that something more does not need to rise to the level of Terry. It's just, is it a reason effectively, are there circumstances suggesting that this is a reasonable safety precaution and we submit here there were. And for that reason, we're asking this court to vacate, to remand for further proceedings. And those further proceedings in my view should not be a do-over of the evidentiary hearing. It should be, we should go to trial. And unless the panel has further questions, I'll rest on my briefs. Thank you, Mr. Coyne. Thank you, Mr. Sharma. We'll take the matter under advisement. Thank you all.